525 So.2d 13 (1988)
Joseph MALONE, Plaintiff-Appellant,
v.
Bob F. WRIGHT, et al., Defendants-Appellees.
No. 86-1262.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1988.
Alfred O. Pavy, Opelousas, for plaintiff-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Robert Daigle, Lafayette, for defendants-appellees.
Before LABORDE and KNOLL, JJ., and CULPEPPER, Judge Pro Tem.[*]
*14 LABORDE, Judge.
Plaintiff-appellant, Joseph Malone, appeals the dismissal of his legal malpractice action against defendants-appellees, Bob F. Wright, Charles W. Dittmer, Jr., Domengeaux & Wright, and their professional liability insurer, INA Underwriters Insurance Company. Suit was dismissed after defendants' exception of prescription was sustained by the trial court. As plaintiff articulates in his brief, the question we must decide is "whether the prescriptive period of one (1) year for Malone to sue Bob F. Wright et al began on May 10, 1982 [sic], or April 4, 1985." We conclude that under Rayne State Bank & Trust Co. v. National Union Fire Insurance Co., 483 So.2d 987, 995 (La.1986), and its progeny, plaintiff's cause of action accrued on May 11, 1982, but was suspended until September of 1982. As suit was not brought against defendants until June of 1985, plaintiff's action had prescribed. Accordingly, we affirm.
The facts of this case are not complicated, but recitation of background information is important to understand the significance of the dates.
Plaintiff entered Savoy Memorial Hospital Foundation (Savoy) in Mamou Grand for leg surgery on February 9, 1981. Plaintiff's left leg was amputated just below the knee. After surgery and recovery, he was scheduled for discharge on March 5, 1981. As plaintiff attempted to sit in the wheelchair, he lost his balance, fell, and allegedly ruptured the incision. An employee of the hospital was to have assisted plaintiff into the wheelchair. Plaintiff was attended to and was subsequently discharged.
Plaintiff reentered Savoy on March 26, 1981, complaining of pain and infection. A second amputation was performed just below the hip. Plaintiff alleges that the amputation was necessitated by the fall on March 5, 1981. Plaintiff was discharged following the second amputation on April 13, 1981.
Soon thereafter, plaintiff consulted Bob F. Wright about bringing a claim against Savoy. Information was exchanged, and the parties entered into a contingent fee arrangement. For one reason or another the attorney assigned to the case, Charles W. Dittmer, Jr., was under the misapprehension that plaintiff's injury occurred on March 27, 1981; therefore, suit was not filed until March 16, 1982. Each of the parties blames the other for the snafu.
Nevertheless, after receiving notice of the suit, Savoy filed an exception of prescription on May 11, 1982. It is undisputed that as of that date plaintiff was put on notice that he would have to show that his cause of action did not prescribe.
Thereafter, upon concluding that plaintiff's suit had prescribed, Mr. Dittmer and his firm withdrew from representing plaintiff. Plaintiff then hired the firm of Boagni, Genovese, & Hebert, Ltd. to pursue the claim. On April 4, 1985, Savoy's exception of prescription was sustained and plaintiff's medical malpractice suit was dismissed. Plaintiff then, on June 28, 1985, brought legal malpractice proceedings against defendants alleging that their negligence allowed the medical malpractice action to prescribe.
Defendants, in turn, filed their own exception of prescription and motion for summary judgment on October 24, 1985. The trial judge, on September 15, 1986, sustained defendants' exception and dismissed plaintiffs suit. This appeal arises from that dismissal.
It is unnecessary to discuss the applicable prescriptive period as it is recognized by the parties that plaintiff's action is under tort and is governed by the one year prescriptive period of La.C.C. art. 3492. See, eg. Rayne State Bank & Trust, 483 So.2d at 993; Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995, 999 (La.App. 1st Cir.1983).
It is axiomatic that prescription does not begin to run until plaintiff can state a cause of action. To state a cause of action in tort, plaintiff must be able to point to both a wrongful act or omission and resultant damages. The damage, if any, necessarily follows the wrongful act; therefore, prescription runs from that point and not from the date of the wrongful act. *15 Rayne State Bank & Trust, 483 So.2d at 995; Owens v. Martin, 449 So.2d 448 (La. 1984). We are called upon to determine when plaintiff was damaged. Recent jurisprudence augments our task.
In Rayne State Bank & Trust, 483 So.2d at 996, the Supreme Court found that the bank was damaged when it was forced to defend the validity of a mortgage: "Although the full extent of the damage was not yet known at that time, the fact that some damage would occur was known, since the bank had to defend against the attack." The Court reasoned that regardless of the actual validity or invalidity of the mortgage, damage was sustained because the bank was forced to defend the attack. In other words, damage occurred when the rights of the bank were attacked in the adversary proceedings.
Following Rayne State Bank & Trust, we have held that prescription begins to run upon attack through adversary proceedings. In Olivier v. National Union Fire Ins. Co., 499 So.2d 1330, 1335 (La. App.3d Cir.1986), we found that the plaintiffs thus were put on notice of the possible defects in an act of surrender when the natural mother filed an exception of no cause of action in the adoption proceedings, therein asserting the invalidity of the act of surrender. "It was at this time that the Olivers [plaintiffs in the subsequent legal malpractice suit] discovered or should have discovered the existence of facts that would have enabled them to bring suit against Gibbs [a defendant]." Thus prescription commenced when the exception was filed.
The First and Second Circuits have relied on the same rationale in several cases. See Riddick & Miller Investment Co. Inc. v. Denicola, 486 So.2d 186, 187 (La.App.lst Cir.), writ denied, 489 So.2d 1275 (La.1986); Gifford v. New England Reinsurance Corporation, 488 So.2d 736, 739 (La.App. 2d Cir.1986); Attain v. First Guaranty Bank, 491 So.2d 60, 62 (La.App.lst Cir.), writ denied, 494 So.2d 1179 (La.1986).
We find that the legal malpractice prescription began to run on May 11, 1982, when Savoy filed its exception of prescription in the original medical malpractice suit. It was at that point that plaintiff knew or should have known the existence of facts that would have enabled him to state a cause of action (wrongful act or omission plus damages) against defendants. However, the attorney-client relationship remained in tact until September of 1982 when Mr. Dittmer withdrew as counsel. Plaintiff could not have practically brought the malpractice suit against his attorney until the attorney-client relationship was severed. Under the doctrine of contra non valentem, prescription was suspended until that time.[1] Therefore, plaintiff had until September of 1983 to file suit against defendants. As suit was not filed until June of 1985, plaintiff's suit clearly prescribed.
For the above and foregoing reasons, the judgment of the trial court sustaining defendants' exception of prescription is affirmed. Plaintiff is taxed with the costs of this appeal.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] For a thorough discussion of the doctrine of contra non valentem, see Corsey v. State, Department of Corrections, 375 So.2d 1319 (La. 1978). For a discussion of the doctrine specifically applied to legal malpractice, see Olivier, 499 So.2d at 1136; Blanchard v. Reeves, 469 So.2d 1165 (La.App.5th Cir), writ denied, 476 So.2d 347 (La.1985)