906 So.2d 579 (2005)
Glen REBARDI, et al.
v.
CREWBOATS, INC., et al.
No. 2004 CA 0642.
Court of Appeal of Louisiana, First Circuit.
February 11, 2005.
*580 David A. Parsiola, Philip F. Cossich, Jr., Belle Chasse, for Plaintiffs-Appellants Glen Rebardi, et al.
Michael J. Vondenstein, Philip C. Brinkman, Metairie, for Defendants-Appellees, Crewboats, Inc., et al.
T.C.W. Ellis, New Orleans, for Defendant-Appellee Somerset Insurance Services of Texas, Inc.
John C. McNeese, New Orleans, for Defendant-Appellee Admiral Insurance Company.
William B. Schwartz, New Orleans, for Defendant-Appellee Fireman's Fund Insurance Company.
G. Frederick Seemann, Lafayette, for Defendant-Cross Claimant Crewboats, Inc.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
In this case, plaintiffs appeal the trial court's judgment sustaining defendant's peremptory exception raising the objection of no cause of action and dismissing, with prejudice, plaintiffs' claims for punitive damages. For the reasons that follow, we reverse and remand.

*581 FACTS AND PROCEDURAL HISTORY
On August 26, 1997, Glen Rebardi and his father, Hilton J. Rebardi,[1] (hereinafter referred to collectively as "plaintiffs") were fishing in their small aluminum skiff in the Atchafalaya River near Berwick, Louisiana, when a crewboat, the M/V Sun River, passed near plaintiffs' boat causing a wake that flipped the boat. As a result, plaintiffs were thrown into the water, sustaining injuries that prompted this litigation. Plaintiffs filed suit against the owner and operator of the offending vessel, Crewboats, Inc. ("Crewboats"), the captain of the vessel, Davis B. McGriff, and three insurance companies that allegedly provided liability insurance to Crewboats; namely, Admiral Insurance Company, Fireman's Fund Insurance Company, and Somerset Insurance Services of Texas, Inc. In addition to asserting claims for compensatory damages, plaintiffs asserted a claim for punitive damages, maintaining that the defendants' "actions in the operation of its vessel, M/V SUN RUNNER, at the time of this accident were willful and reckless and exhibited callous and grave disregard for the rights of the plaintiffs and others in the vicinity of the accident site" and "constituted gross negligence within the meaning of the general maritime law and under Louisiana Law."
In response to plaintiffs' petition, Mr. McGriff filed a peremptory exception raising the objections of no cause of action, arguing that punitive damages were not recoverable under Louisiana law or the general maritime law. The matter proceeded to a hearing on September 26, 2003, at which time the trial court heard arguments from the parties and maintained the objection of no cause of action. Citing the case of Miles v. Apex Marine Corporation, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), and the jurisprudence that followed, the court concluded that punitive damages are not recoverable under the general maritime law. The court subsequently rendered judgment on October 8, 2003, dismissing, with prejudice, plaintiffs' claims for punitive damages.[2] It is from this judgment that plaintiffs have appealed, assigning error to the trial court's judgment granting Mr. McGriff's objection of no cause of action.

DISCUSSION
The function of the peremptory exception raising the objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993); Copeland v. Treasure Chest Casino, L.L.C., XXXX-XXXX, p. 3 (La.App. 1 Cir. 6/21/02), 822 So.2d 68, 70. Appellate courts review a judgment sustaining an objection of no cause of action de novo. Copeland, XXXX-XXXX at 3, 822 So.2d at 70. Generally, no evidence may be introduced to support or controvert the exception raising the objection of no cause of action. La.Code Civ. P. art. 931. However, the jurisprudence recognizes an exception to this rule, which allows the court to consider evidence that is admitted, without objection, to enlarge the pleadings. Stephenson v. Nations Credit Financial *582 Services Corp., 98-1688, 98-1689, pp. 14-15 (La.App. 1 Cir. 9/24/99), 754 So.2d 1011, 1021. In addition, all facts pleaded in the petition are accepted as true, and any doubts are resolved in favor of the sufficiency of the petition. Davis v. Town of St. Gabriel, XXXX-XXXX, p. 10 (La.App. 1 Cir. 2/15/02), 809 So.2d 537, 543, writs denied, XXXX-XXXX, XXXX-XXXX (La.10/14/02), 827 So.2d 420. Accordingly, the only issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Perere v. Louisiana Television Broadcasting Corporation, 97-2873, p. 3 (La.App. 1 Cir. 11/6/98), 721 So.2d 1075, 1077. Thus, if a petition alleges sufficient facts to establish a case cognizable in law, an exception raising the objection of no cause of action must fail. Livaccari v. Alden Engineering, Inc., XXXX-XXXX, p. 6 (La.App. 1 Cir. 12/1/00), 808 So.2d 383, 388.
On appeal, plaintiffs maintain that the trial court "mistakenly applied the wrong legal standards to the case and arrived at a conclusion which not only is unsupported by existing jurisprudence on the issue, but actually conflicts with this Court's earlier rulings on this precise issue." Citing to this court's rulings in Williams v. State Through Dept. of Wildlife and Fisheries, 95-2456 (La.App. 1 Cir. 11/20/96), 684 So.2d 1018, writ denied, 96-3069 (La.3/7/97), 689 So.2d 1372, and Ellender v. Texaco, Inc., 93-1803 (La.App. 1 Cir. 6/24/94), 640 So.2d 845, writ denied, 94-2339 (La.9/30/94), 642 So.2d 883, plaintiffs argue that even after the Supreme Court's decision in Miles, punitive damages are available under the general maritime law. We agree.
Although rarely imposed, punitive damages are available as a remedy in general maritime actions where a defendant's intentional or wanton and reckless conduct amounted to a conscious disregard for the rights of others. Poe v. PPG Industries, XXXX-XXXX, p. 6 (La.App. 3 Cir. 3/28/01), 782 So.2d 1168, 1173, writ denied, XXXX-XXXX (La.6/22/01), 794 So.2d 801; see also Williams, 95-2456 at 5, 684 So.2d at 1022. Nevertheless, in the wake of the Supreme Court's decision in Miles, other courts have been increasingly hesitant to allow punitive damages in certain general maritime actions involving personal injury or death. In Miles, the Court held that damages recoverable in an action for the wrongful death of a seaman do not include loss of society. Miles, 498 U.S. at 37, 111 S.Ct. at 328. In reaching this conclusion, the Court enunciated principles of uniformity relevant to wrongful death actions, and more broadly, to maritime tort law, which have moved subsequent courts to limit recovery in other similar contexts. In the instant case, Mr. McGriff successfully argued to the trial court that the Supreme Court's holding in Miles extended to bar recovery of punitive damages in all general maritime cases. Based on our extensive review of relevant jurisprudence, this court does not believe the decision in Miles should be read so broadly.
In CEH, Inc. v. F/V Seafarer, 70 F.3d 694, 700-702 (1st Cir.1995), the United States First Circuit Court of Appeal very eloquently analyzed the uniformity principle espoused by Miles and its application to cases such as the one before us now:
In Miles, the mother of a deceased seaman brought a wrongful death action sounding both in negligence under the Jones Act, and unseaworthiness under the general maritime law. In denying recovery for loss of society, a form of nonpecuniary relief, the Court ensured a uniform scheme of recovery regardless of whether a wrongful death action was brought under the Death on High Seas Act (DOHSA), the Jones Act or general *583 maritime law. The statutory actions provided only for pecuniary relief: the DOHSA explicitly and the Jones Act implicitly, through its incorporation of the Federal Employers' Liability Act (FELA), which, prior to the enactment of the Jones Act, had been construed to allow only pecuniary relief. Miles, 498 U.S. at 32, 111 S.Ct. at 325 (citing Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 69-71, 33 S.Ct. 192, 196, 57 L.Ed. 417 (1913)). The Court extended this restriction to the unseaworthiness claim, explaining that "[i]t would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence." Id. at 33, 111 S.Ct. at 326.
The Court's decision to "restore a uniform rule applicable to all actions for the wrongful death of a seaman," id., logically followed the principle espoused in Moragne, 398 U.S. at 401-02, 90 S.Ct. at 1788 (quoting The Lottawanna, 88 U.S. (21 Wall.) 558, 575, 22 L.Ed. 654 (1875)), to promote "uniformity [that] not only will further the concerns of both of the 1920 Acts but also will give effect to the constitutionally based principle that federal admiralty law should be `a system of law coextensive with, and operating uniformly in, the whole country.'" Though these principles of uniformity defy precise limits, we think it clear that the Supreme Court had in mind the need to defer to statutory enactments addressing like issues. As the Court reasoned: "In this era, an admiralty court should look primarily to these legislative enactments for policy guidance. . . . [and] must be vigilant not to overstep the well-considered boundaries imposed by federal legislation." Miles, 498 U.S. at 27, 111 S.Ct. at 322. Miles, therefore, does not, as defendants contend, signify a call for universal uniformity of maritime tort remedy, but rather emphasizes the importance of uniformity in the face of applicable legislation.
The cases post-Miles reflect this focus on relevant legislation. If the factual situation could support an action under either DOHSA or the Jones Act, then nonpecuniary relief is unavailable. See, e.g., Horsley v. Mobil Oil Corp., 15 F.3d 200, 203 (1st Cir.1994) (punitive damages not recoverable in unseaworthiness action for injured seaman); Miller v. American President Lines, Ltd., 989 F.2d 1450, 1459 (6th Cir.1993) (punitive damages not available in unseaworthiness action for the wrongful death of a seaman); Rollins v. Peterson Builders, Inc., 761 F.Supp. 943, 950 (D.R.I.1991) (same).
The import of this legislation in the context of personal injury has led some courts to bar nonpecuniary relief in circumstances addressed by the Jones Act, but involving non-Jones Act plaintiffs and defendants. See, e.g., Wahlstrom v. Kawasaki Heavy Industries, Ltd., 4 F.3d 1084, 1094 (2d Cir.1993) (concluding, based in large part on post-Miles authority, that representatives of a deceased nonseaman could not recover punitive damages under the general maritime law); Trahan v. Texaco, Inc., 625 So.2d 295, 297 (La.App. 4th Cir. 1993) (dismissing a general maritime claim for loss of consortium brought by a seaman's spouse against nonemployer third-party defendants); but see, e.g., Emery v. Rock Island Boatworks, 847 F.Supp. 114, 117-18 (C.D.Ill.1994) (injured passenger's husband could recover nonpecuniary damages because his claim not cognizable under the Jones Act or DOHSA and, therefore, concerns *584 for uniformity do not exist); Sugden v. Puget Sound Tug & Barge Co., 796 F.Supp. 455, 457 (W.D.Wash.1992) (wife of deceased seaman could recover nonpecuniary damages from non-employer because husband was not a Jones Act seaman for purposes of the suit).
Recently, the Fifth Circuit held that cure and maintenance claims, often considered to lack a statutory counterpart, see Anderson v. Texaco, Inc., 797 F.Supp. 531, 536 (E.D.La.1992), were, in fact, governed by Miles. Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1512 (5th Cir.1995) (en banc); see also Glynn v. Roy Al Boat Management Corp., 57 F.3d 1495 (9th Cir.1995). While at first glance, Guevara may seem to provide comfort to defendants, a closer reading supports our belief that Miles simply is irrelevant here.

Guevara followed the approach set forth in Miles. First, the court determined whether the factual setting of the case was covered by a statute like the Jones Act or DOHSA. 59 F.3d at 1506. Then, upon finding a statutory/general maritime law overlap, the court invoked the "Miles damages uniformity principle" and excluded punitive damages. Id. at 1512-13. As the court reasoned, "[i]t makes little sense to create a fragmentation of admiralty law by allowing punitive damages in one class of maintenance and cure cases" while disallowing them in another. Id. at 1513.

Guevara does not assist defendants in any way. Rather, it merely illustrates, as do the other post-Miles cases cited above, that Miles may be applicable in those areas of maritime law where, at the very least, there is an overlap between statutory and decisional law. In the instant case, however, there is no legislation whatever that touches upon circumstances involving the reckless or willful destruction of property. Quite simply, Congress has not spoken, and we consequently see no basis under Miles for barring nonpecuniary relief here.
Defendants' contention that it would be peculiar to provide plaintiffs greater relief for property damage than for personal injury has some force. The concern expressed in Miles, however, was not with respect to an award of nonpecuniary damages in maritime cases in general, but with inconsistency with Congressional pronouncement. Miles does not mandate a uniform result for every maritime action and we are hesitant to ascribe to the Court a holding that goes well beyond any issue discussed there. See United States v. London, 66 F.3d 1227, 1241 (1st Cir.1995).
In sum, in the absence of any relevant legislation, we think that the uniformity principle enunciated in Miles is inapplicable. Therefore, plaintiffs are entitled to forms of relief traditionally available under the general maritime law, including punitive damages. Accordingly, we affirm the district court's determination that punitive damages are recoverable under plaintiff's general maritime claim. [Footnotes omitted.]
In Williams, a case decided approximately six years after the Miles case, plaintiffs were commercial crab fishermen who filed suit against the State after being injured when their boat was struck by a boat operated by an agent for the Department of Wildlife and Fisheries. In addition to claims for compensatory damages, plaintiffs sought punitive damages for their injuries. This court concluded, "punitive damages are available under the general maritime tort law and may be recovered when a wrongdoer has acted willfully and with reckless, callous or gross disregard for the plaintiff's rights or when *585 the conduct shows gross negligence." Williams, 684 So.2d at 1022.
In the Ellender case, a decision rendered approximately four years after Miles, this court likewise found that punitive damages are recoverable under the general maritime law. The Ellender plaintiff was a driller injured in a slip and fall accident aboard a vessel owned by Cross Marine, Inc. He filed suit against his employer under the Jones Act and the general maritime law, and against Cross Marine under the general maritime law. As to his claim against Cross Marine, plaintiff sought punitive damages for the alleged unseaworthiness of the vessel. Cross Marine moved for summary judgment on the punitive damage claim, asserting that based on Miles, punitive damages were no longer available under the general maritime doctrine of unseaworthiness so as to provide greater remedies to a seaman than those provided under the statutory scheme of the Jones Act. The trial court found Miles to be controlling and dismissed plaintiff's claim for punitive damages. An appeal to this court by plaintiff followed. In reversing the judgment of the trial court, this court concluded:
In Miles, the Supreme Court faced, among other things, the question of whether a deceased seaman's surviving parent could recover loss of society damages for the wrongful death of a seaman under the Jones Act. Initially, the Court noted that the Jones Act on its face does not limit the scope of recoverable damages. However, the Court said, the Jones Act does incorporate the substantive recovery provisions of the Federal Employees Liability Act (FELA), which authorize recovery only for pecuniary loss. The Supreme Court concluded that because this limitation of damages contained in FELA predated the enactment of the Jones Act, and because Congress expressly incorporated FELA's substantive provisions into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well. Hence, the Court held that there is no recovery for loss of society in a Jones Act wrongful death action.
The Miles Court, however, dealt only with damages for loss of society; it did not address the recoverability of punitive damages. Punitive damages differ from other non-pecuniary damages in that they do not compensate a plaintiff for damage incurred but, rather, are given to the plaintiff over and above the full compensation for his injuries. They serve the purpose of punishing the defendant, of teaching him not to engage in such conduct again, and of deterring others from following the defendant's example. See Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App. 4th Cir.1992), writ denied, 613 So.2d 996 (La.1993), cert. denied, 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993), citing Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir.1981).
We find that punitive damages under general maritime law is a remedy which is beyond the extension of Miles. Therefore, the long-standing precedent of recognizing the right to assert a claim for punitive damages under the general maritime law remains the law. Complaint of Merry Shipping, Inc., 650 F.2d 622 (5th Cir.1981); Mistich v. Pipelines, Inc., 609 So.2d 921 (La.App. 4th Cir. 1992), writ denied, 613 So.2d 996 (La. 1993), cert. denied, 509 U.S. 913, 113 S.Ct. 3020, 125 L.Ed.2d 709 (1993).
Ellender, 93-1803 at 2-3, 640 So.2d at 846.
Applying the above principles of law to the instant case, we conclude the trial court erred in sustaining Mr. McGriff's exception raising the objection of no cause *586 of action. This is neither a Jones Act nor a DOHSA case and, in the absence of any relevant legislation, we hold that the uniformity principle enunciated in Miles is inapplicable herein. Until such time as Congress sees fit to address this situation, this court sees no reason under Miles for barring punitive damages as an available remedy under the general maritime law. Thus, accepting the well-pleaded allegations of fact in plaintiffs' petition as true, we are satisfied that plaintiffs have alleged sufficient facts to establish a case cognizable in law. Accordingly, we reverse the judgment below.

CONCLUSION
For the above and foregoing reasons, we reverse the trial court's judgment sustaining Mr. McGriff's exception raising the objection of no cause of action and dismissing, with prejudice, plaintiffs' claims for punitive damages, and remand the case to the trial court for further proceedings consistent with this opinion. All costs associated with this appeal are assessed against Mr. McGriff.
REVERSED AND REMANDED.
NOTES
[1] According to the record, Hilton J. Rebardi died on January 26, 2002, of causes unrelated to the instant litigation. His wife, Ruth L. Rebardi, was substituted as a party plaintiff by order of the court dated July 9, 2003.
[2] On August 14, 2003, the trial court rendered a similar judgment in favor of Crewboats, maintaining an objection of no cause of action with regard to plaintiffs' claim for punitive damages. That judgment is the subject of a separate appeal also decided this date.